CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
OCT 12 2007
JOHN F. CORCORAN, CLERK
BY: [signature]
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| WESLEY C. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:07CV00117 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CHERI SMITH, et al., | ) | By: Hon. Glen E. Conrad |
| | ) | United States District Judge |
| Defendants. | ) | |

Plaintiff Wesley C. Smith, proceeding pro se, filed this civil rights action arising from acrimonious custody and divorce proceedings that began in the Prince William County Juvenile and Domestic Relations District Court in 2002. Smith names eleven defendants who or which have been involved in the proceedings, and he asserts multiple claims. The named defendants are his ex-wife, Cheri Smith; her significant other, Igor Bakhir; his ex-wife's attorney, Loretta Vardy; the guardian ad litem appointed for the Smiths' minor child, Ronald Fahy; five Prince William County Circuit Court Judges, Lon Farris, Leroy Millette, Jr., Rossie Alston, Jr., William Hamblen, and Richard Potter; the Prince William County Circuit Court; and a Pulaski County Juvenile and Domestic Relations District Court Judge, Lee Chitwood. The action is presently before the court on the defendants' motions to dismiss. For the following reasons, the court will grant the defendants' motions.

## Background

The following facts pertaining to the history of the Smiths' custody and divorce proceedings are taken from the plaintiff's complaint, the supplemental pleading filed by the plaintiff on May 15, 2007, and the supplemental brief and exhibits filed by the plaintiff following the motions hearing on May 15, 2007.

Cheri Smith was awarded temporary custody of the couple's son, Liam, in October of 2002. An order was subsequently entered awarding the plaintiff visitation privileges.

In June of 2003, Cheri Smith moved out of the couple's home and filed for divorce. The following month, the Prince William County Juvenile and Domestic Relations District Court issued its final order granting Cheri Smith sole custody of Liam. The plaintiff appealed the order to the Prince William County Circuit Court, where Cheri Smith's bill of complaint for divorce was pending.

On September 10, 2003, Judge Potter held a hearing on a motion filed in the divorce case. The plaintiff alleges that, during the hearing, Judge Potter made a surprise ruling on the issue of custody, depriving the parties of the ability to present evidence or call witnesses.

On August 17, 2004, Judge Farris held a hearing on a motion filed by Cheri Smith, in which she sought an order preventing the plaintiff from making derogatory statements about her. By order entered September 23, 2004, Judge Farris granted the motion, and directed the plaintiff to cease and desist from displaying or promulgating any negative, disrespectful, or denigrating statements about his ex-wife, or any allegations that she had abused their son. The plaintiff alleges that he filed numerous motions regarding the order, and that all of the motions were denied.

On December 28, 2004, Cheri Smith filed an emergency motion to suspend visitation. The plaintiff alleges that Judge Alston held an ex parte hearing on the motion on January 3, 2005, and that he suspended the plaintiff's visitation rights until a hearing could be held on January 18, 2005. The plaintiff alleges that Judge Millette conducted the January 18, 2005 hearing, and that he subsequently entered an order suspending the plaintiff's visitation rights. On January 26,

2005, Judge Alston denied the plaintiff's motion for reconsideration. The plaintiff's visitation privileges remained suspended for seventeen months.

A final hearing was held in the Smiths' custody and divorce proceedings in May of 2006. On June 9, 2006, the final divorce decree was entered. Pursuant to the decree, the plaintiff was denied spousal support, Cheri Smith was awarded sole custody of Liam, the plaintiff was awarded certain visitation rights, and the plaintiff was ordered to pay child support.

The plaintiff appealed the final divorce decree to the Court of Appeals of Virginia. The plaintiff alleges that the appeal was dismissed for procedural reasons.[1] The plaintiff subsequently filed a petition for rehearing. Before receiving a ruling on the petition, the plaintiff filed the instant action.

In Count One, the plaintiff alleges that the defendants violated his First Amendment rights by causing an order to be entered prohibiting the plaintiff from exercising his right to free speech. Specifically, the plaintiff challenges the validity of the order entered by Judge Farris on

---

[1] The plaintiff has submitted copies of certain state court documents as exhibits. The plaintiff has also repeatedly referred the court to his website, which contains copies of numerous state court documents, including his petition for appeal to the Court of Appeals of Virginia and subsequent orders entered by the Court of Appeals. A review of the plaintiff's petition for appeal reveals that the plaintiff raised most of the same claims on appeal that he has raised in the instant action. For instance, the plaintiff argued that the Circuit Court deprived him of his constitutional right to a jury trial; that the Circuit Court erred by proceeding without subject matter or personal jurisdiction; that the Circuit Court violated his constitutional rights as a parent; that the custody ruling violated his due process and equal protection rights; that the Circuit Court's ruling on child support violated the plaintiff's constitutional rights; that the Circuit Court erred by issuing an unconstitutional prior restraint on free speech; that the Circuit Court erred by holding an ex parte hearing on a motion to suspend visitation; and that Virginia's laws on child support and child custody are unconstitutional.

By order entered October 23, 2006, the Court of Appeals directed the plaintiff to show cause as to why the appeal should not be dismissed for failure to file an appendix, as required by Rule 5A:25(a) of the Rules of the Supreme Court of Virginia, and for failure to file an opening brief that complies with the requirements set forth in Rule 5A:20(d). The appeal was subsequently dismissed on March 1, 2007. In dismissing the appeal, the Court of Appeals indicated that the plaintiff failed to file a replacement opening brief, as directed in the previous order.

September 23, 2004, which prohibited the plaintiff from displaying or promulgating any negative, disrespectful, or denigrating statements about his ex-wife, or any allegations that she had abused their son.

In Count Two, the plaintiff alleges that the defendants violated the Seventh Amendment and the Constitution of Virginia by refusing to permit the custody and divorce case to proceed to a jury trial. The plaintiff indicates that he filed multiple motions demanding a jury trial and that all of his requests were denied.

In Count Three, the plaintiff alleges that the defendants subjected him to cruel and unusual punishment, in violation of the Eighth Amendment and the Constitution of Virginia, by causing an order to be entered in January of 2005, which suspended the plaintiff's visitation rights.

In Count Four, the plaintiff alleges that by depriving him of his visitation rights for eighteen months, the defendants violated his "common law right to the custody, care, control, and companionship of his children," as guaranteed by the Ninth Amendment and the Constitution of Virginia.

In Count Five, the plaintiff alleges that the defendants have subjected him to involuntary servitude, in violation of the Thirteenth Amendment, by forcing him to pay child support.

In Count Six, the plaintiff alleges that the defendants deprived him of his due process and equal protection rights. Specifically, the plaintiff alleges that women in Virginia are awarded custody 96 percent of the time, indicating a clear bias towards women and a gross violation of his equal protection rights. The plaintiff further alleges that the judges actively engaged in denying him due process by: (1) proceeding with the custody and divorce case even though the plaintiff

was not properly served with process; (2) issuing orders without subject matter or personal jurisdiction; (3) issuing orders in violation of the Constitution of the United States and Virginia law; (4) depriving the plaintiff of visitation without any claim or finding of harm to the child; (5) illegally quashing subpoenas; (6) refusing to compel discovery; (7) allowing his ex-wife to plead the Fifth Amendment when unwarranted; (8) ruling in favor of the mother when case law favored the father; (9) holding hearings without adequate notice; (10) granting a divorce on grounds contrary to accepted case precedence; (11) refusing to grant a divorce on grounds of adultery by the plaintiff's ex-wife; (12) holding ex parte hearings; (13) refusing to state any compelling interests to justify interfering with the plaintiff's constitutional rights; (14) permitting hearsay testimony; (15) refusing to allow the plaintiff to make proffers for appeal; and (16) refusing to allow the plaintiff to record hearings.

In Count Seven, the plaintiff alleges that Igor Bakhir committed perjury during his deposition; that Bakhir, Ronald Fahy, and Loretta Vardy obstructed justice by refusing to comply with subpoenas for documents and witnesses; and that all of the defendants worked together to obstruct justice in the case by various means.

In Count Eight, the plaintiff alleges that Virginia's statutes regarding custody and visitation are facially unconstitutional and as applied. Specifically, the plaintiff alleges that the statutes violate the Ninth, Thirteenth, and Fourteenth Amendments, and that they are overbroad.

Smith seeks a judgment and decree declaring that the defendants' actions were unconstitutional; an injunction requiring the defendants to grant him additional parenting time; an order enjoining the defendants from violating his constitutional rights; an order enjoining the defendants from enforcing the challenged statutes in a manner inconsistent with the

constitutional rights of the plaintiff; compensatory damages; an order declaring that all orders in his custody and divorce case are null and void; an order declaring that Virginia's statutory scheme for allocation of parental responsibilities and rights and parenting time are unconstitutional both as written and as applied; and any other appropriate declaratory relief.

**Standard of Review**

The defendants have moved to dismiss the plaintiff's claims, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2] "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint"; such motion "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999) (internal citations omitted). When reviewing a claim pursuant to Rule 12(b)(6), the court must accept all of the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Id. at 244.

Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a

---

[2] The defendants have also moved to dismiss the plaintiff's claims pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that the court lacks subject matter jurisdiction under the domestic relations exception to federal jurisdiction and the Rooker-Feldman doctrine. However, the court concludes that neither the domestic relations exception nor the Rooker-Feldman doctrine serves as a complete bar to the court's exercise of subject matter jurisdiction over the plaintiff's claims. See United States v. Johnson, 114 F.3d 476, 481 (4th Cir. 1997) (explaining that the domestic relations exception serves as a limitation on diversity jurisdiction, and that "it has no generally recognized application as a limitation on federal question jurisdiction) (citing Ankenbrandt v. Richards, 504 U.S. 689, 700-701 (1992)); see also Exxon Mobil Corp. v. Saudi Basic Indust., 544 U.S. 280, 284 (2005) (holding that the Rooker-Feldman doctrine operates only in a narrow set of circumstances, namely "cases brought by state court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."). Accordingly, the court will determine whether the plaintiff's claims withstand the defendants' motions under Rule 12(b)(6).

cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-1965 (2007). Instead, assuming the factual allegations in the complaint are true, they "must be enough to raise a right to relief above the speculative level." Id.

The court notes that in ruling on the defendants' Rule 12(b)(6) motions, the court has considered the facts alleged in the plaintiff's complaint, as well as those alleged in the supplemental pleading filed by the plaintiff on May 15, 2007, the supplemental brief filed by the plaintiff following the motions hearing, and the plaintiff's responses to the defendants' motions. Consequently, the court will deny the plaintiff's "motion to amend if needed," which was filed by the plaintiff on June 18, 2007.

## Discussion

### I. Claims under 42 U.S.C. § 1983

The plaintiff asserts several claims against the defendants under 42 U.S.C. § 1983. Section 1983 imposes civil liability on any person acting under color of state law to deprive another person of rights and privileges secured by the Constitution and laws of the United States. 42 U.S.C. § 1983.

#### A. The Prince William County Circuit Court

The court agrees with the state defendants that the plaintiff's claims against the Prince William County Circuit Court, including the plaintiff's claims under § 1983, are barred by the Eleventh Amendment. The Eleventh Amendment precludes any action seeking legal or equitable relief against a sovereign state in federal court unless Congress has abrogated the state's immunity from such action, or the state has waived the immunity. Seminole Tribe v. Florida, 517 U.S. 44, 54-58 (1996). Eleventh Amendment immunity extends to "state agents and state

instrumentalities" as well as the states themselves. Regents of Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997). Since there is no indication of any abrogation or waiver of the state's immunity in this case, the Circuit Court, as an instrumentality of the state, is immune from suit. Accordingly, the court will dismiss the plaintiff's claims against the Circuit Court.

      B.     The Judges and the Guardian Ad Litem

           1.     Absolute Immunity

It is well established that judges are absolutely immune from liability for damages arising out of their judicial actions. Chu v. Griffith, 771 F.2d 79, 81 (4th Cir. 1985) (citing Bradley v. Fisher, 80 U.S. 335 (1872); Stump v. Sparkman, 435 U.S. 349 (1978)). Although the Supreme Court of the United States has held that judicial immunity does not extend to injunctive relief, Pulliam v. Allen, 466 U.S. 522, 536-543 (1984), Congress has amended § 1983 to provide that "injunctive relief shall not be granted" in an action brought against "a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." Based on this amendment, courts have held that § 1983 limits the type of relief available to plaintiffs who sue judicial officers to declaratory relief. See Bolin v. Story, 225 F.3d 1234, 1242 (11th Cir. 2000); Johnson v. McCuskey, 72 Fed. Appx. 475, 477 (7th Cir. 2003).

The doctrine of judicial immunity is expansive. The Supreme Court has held that judicial immunity applies "'however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff.'" Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985) (quoting Bradley, 80 U.S. at 347). Stated differently, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his

authority." Stump, 435 U.S. at 356-357. Instead, the doctrine of judicial immunity is only overcome when a judge's actions are not taken in his judicial capacity or when they are taken in the complete absence of all jurisdiction. Mireles v. Waco, 502 U.S. 9, 11-12 (1991).

With respect to the first inquiry, courts must "draw the line between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges." Forrester v. White, 484 U.S. 219, 227 (1988). "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Stump, 435 U.S. at 362. With respect to the second inquiry, courts must distinguish between actions that are taken in the "clear absence of all jurisdiction" over the subject matter, which are not afforded the protection of judicial immunity, and actions that are merely in "excess of jurisdiction," which are afforded such protection. Id. at 356. For instance,

> if a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

Id. at 357 n.7. The Supreme Court has emphasized that "the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." Id. at 356.

Applying these principles, the court concludes that all of the judges named as defendants are entitled to judicial immunity. The acts complained of by the plaintiff were clearly judicial in nature, and the plaintiff does not contend otherwise. The plaintiff complains of acts that the defendants took while they were adjudicating custody and divorce proceedings involving the

plaintiff and his ex-wife. These proceedings resulted in the issuance of numerous orders, as well as the issuance of a final divorce decree. There can be little doubt that conducting hearings and issuing orders are acts which are normally performed by judges. Such acts do not become nonjudicial merely because they were allegedly taken in error. Mireles, 502 U.S. at 13.

Additionally, the plaintiff's allegations do not indicate that the judges acted in the clear absence of all jurisdiction. While the plaintiff contends that jurisdiction was lacking in the custody and divorce proceedings because he was not properly served with process, this allegation is insufficient to deprive the judges of immunity. A judge acts in the complete absence of all jurisdiction only "if the matter upon which he acts is clearly outside the *subject matter jurisdiction* of the court over which he presides." King v. Love, 766 F.2d 962, 965 (6th Cir. 1985) (emphasis added); see also Green v. Maraio, 722 F.2d 1013, 1017 (2d Cir. 1983) ("Although it may be argued that once Green was sentenced the trial judge no longer had personal jurisdiction over Green and the case, Judge Ingrassia did possess subject matter jurisdiction. . . . It is apparent that a judge who possesses subject matter jurisdiction is not within the 'clear absence of all jurisdiction' posture which would deprive him of the use of the defense of judicial immunity.").

During the course of the motions hearing on May 15, 2007, the arguments focused on the constitutional propriety of the order entered by Judge Farris on September 23, 2004, which prohibited the plaintiff from displaying or promulgating certain statements regarding the plaintiff's ex-wife. The order was clearly entered during the course of custody and divorce proceedings over which the Prince William County Circuit Court had subject matter jurisdiction. See, e.g., Va. Code §§ 20-96, 20-103, 20-107.2. Thus, even assuming that the order violated the

plaintiff's First Amendment rights, Judge Farris would still be entitled to judicial immunity. See Marshall v. Bowles, 92 Fed. Appx. 283, 284-85 (6th Cir. 2004) (holding in a § 1983 action arising from a custody dispute that a domestic relations judge was entitled to judicial immunity as to all of the plaintiff's claims, including her claim that the judge violated her First Amendment rights by issuing a gag order that stopped the plaintiff's cable show); Fields v. Soloff, 920 F.2d 1114, 1119 (2d Cir. 1990) ("Even if the speech-restrictive order was improper, Justice Soloff is immune from section 1983 damages because she did not act in the 'clear absence of all jurisdiction.'"). Because it is apparent from the plaintiff's allegations that all of the plaintiff's claims against the judges arise from actions that were taken during the course of proceedings over which they had subject matter jurisdiction, the judges are absolutely immune from liability for damages arising out of their judicial actions. Additionally, § 1983 bars the plaintiff's claims for injunctive relief.

Likewise, Ronald Fahy, the guardian ad litem appointed to represent the Smiths' son, is immune from liability under § 1983, since all of the actions complained of occurred within the course of the custody and divorce proceedings. See Fleming v. Asbill, 42 F.3d 886, 889 (4th Cir. 1994) ("Even if Asbill lied to the judge in open court, she was still acting as the guardian, and is immune from § 1983 liability.").

2. Younger Abstention

To the extent that the plaintiff's claims for declaratory relief under § 1983 withstand the defendants' assertions of immunity, the court concludes that such claims are barred by the abstention doctrine set forth in Younger v. Harris, 401 U.S. 37 (1971). The Younger doctrine provides that

> a federal court should abstain from interfering in a state proceeding, even though it has jurisdiction to reach the merits, if there is (1) an ongoing state judicial proceeding, instituted prior to any substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides an adequate opportunity for the plaintiff to raise the federal constitutional claim advanced in the federal lawsuit.

Nivens v. Gilchrist, 319 F.3d 151, 153 (4th Cir. 2003) (citing Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982)). The doctrine stems from principles of comity and federalism and from a recognition that state courts are as capable as federal courts of deciding federal constitutional issues. Martin Marietta Corp. v. Maryland Comm'n on Human Relations, 38 F.3d 1392, 1396 (4th Cir. 1994).

In Moore v. City of Asheville, 396 F.3d 385, 393 (4th Cir. 2005), the United States Court of Appeals for the Fourth Circuit affirmed the district court's application of Younger in a case in which the plaintiff had filed suit under § 1983, seeking a declaratory judgment, injunctive relief, and damages as a result of the City of Asheville's enforcement of its noise ordinance. Moore, 396 F.3d at 387. The plaintiff, Carroll Moore, was cited on two occasions for street preaching. Id. at 388. Although Moore paid the resulting fines, he did not pursue his rights of state administrative appeal or judicial review. Id. at 389. Instead, Moore filed suit in federal court after the times for appealing the citations had expired. Id. In determining whether the Younger abstention doctrine applied, the Fourth Circuit noted that the "core Younger concerns" were "(1) whether the federal action was 'duplicative,' (2) whether it cast a 'direct aspersion on the capabilities and good faith of state appellate courts,' (3) whether it was 'disruptive' of the State's important interests, and (4) whether the federal action was 'designed to annul the results of [the] state trial.'" Id. at 394 (quoting Huffman v. Pursue Ltd., 420 U.S. 592, 608-609 (1975)). The

Fourth Circuit ultimately concluded that Moore's federal action was barred under Younger, regardless of whether state appellate remedies were still available when Moore filed suit in federal court or whether he had already defaulted on such remedies, since "the federal court intervention that he sought would be duplicative, would disrupt the State's substantive policies, would offend the State's appellate processes, and would undo what the State has done by a now-nonappealable order." Id. at 395.

Applying these principles, the court concludes that the plaintiff's § 1983 claims for declaratory relief are subject to dismissal under Younger. First, it is undisputed that the state appellate proceedings were ongoing at the time this action was filed, in that the plaintiff's petition for rehearing was still pending before the Court of Appeals of Virginia. Second, it is well established that child custody and support matters implicate important state interests. See Moore v. Sims, 442 U.S. 415, 435 (1979) (family relations are a traditional area of state concern); Mann v. Conlin, 22 F.3d 100, 106 (6th Cir. 1994) (domestic relations law is a "paramount state interest"). Third, it is clear that the plaintiff had the opportunity to raise his federal constitutional claims in the state appellate proceedings. Finally, the federal intervention that the plaintiff seeks "would be duplicative, would disrupt the State's substantive policies, [and] would offend the State's appellate processes." Moore, 396 F.3d at 395. Because the plaintiff has not alleged extraordinary circumstances that would qualify as an exception to the proper application of Younger, see Nivens, 319 F.3d at 154, the court concludes that the plaintiff's § 1983 claims for declaratory relief must be dismissed.

C. Cheri Smith, Igor Bakhir, and Loretta Vardy

As private citizens, Cheri Smith, Igor Bakhir, and Loretta Vardy are not subject to liability under § 1983 unless they engage in conduct that qualifies as state action. See American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) ("Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'") (quoting Blum v. Yaretsky, 457 U.S. 991, 1002 (1982)). In an attempt to satisfy the state action requirement, the plaintiff argues in response to the defendants' motions to dismiss that Smith, Bakhir, and Vardy engaged in a conspiracy with the judges to deprive the plaintiff of his constitutional rights. However, the plaintiff's conclusory allegations of a conspiracy are legally insufficient. See Sooner Products Co. v. McBride, 708 F.2d 510, 512 (10th Cir. 1983) ("When a plaintiff in a § 1983 action attempts to assert the necessary 'state action' by implicating state officials or judges in a conspiracy with private defendants, mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action."). The plaintiff's supplemental brief, filed after the motions hearing on May 15, 2007, is also bereft of sufficient facts to support the proposition that Smith, Bakhir, or Vardy engaged in a conspiracy with the judges. The plaintiff's argument that a conspiracy is evidenced by the fact that two of the judges prepared orders in advance of hearings is inadequate. See Roginsky v. Blake, 131 F. Supp. 2d 715, 719 (D. Md. 2000) ("Plaintiff offers no detailed factual account to show a conspiracy with a state actor. For example, Plaintiff's claim that Judge Nalley was involved in a conspiracy as evidenced by his ruling on a continuance

is not enough."). Accordingly, the court concludes that the plaintiff has failed to state a claim under § 1983 against Smith, Bakhir, or Vardy.[3]

II. Claims under 42 U.S.C. §§ 1985 and 1986

The plaintiff's complaint also references 42 U.S.C. §§ 1985 and 1986. Specifically, with respect to § 1985, the plaintiff quotes § 1985(3), which provides, in pertinent part, as follows:

> If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

To state a claim under § 1985(3), the plaintiff must allege facts which establish: "(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995). To establish a "conspiracy" for purposes of § 1985, a plaintiff must allege facts which show "an agreement or a 'meeting of the minds' by defendants to violate the [plaintiff's] constitutional rights." Id. at 1377. This threshold requirement is very high; the

---

[3] To the extent that the plaintiff's claim under the Thirteenth Amendment does not require state action, United States v. Booker, 655 F.2d 562 (4th Cir. 1981), the claim nonetheless fails on the merits. See United States v. Ballek, 170 F.3d 871, 874 (9th Cir. 1999) (holding that "child-support awards fall within that narrow class of obligations that may be enforced by means of imprisonment without violating the constitutional prohibition against slavery").

Fourth Circuit has emphasized that it "has rarely, if ever, found that a plaintiff has set forth sufficient facts to establish a section 1985 conspiracy." Id. Mere conclusory allegations of a purported conspiracy, in the absence of supporting factual allegations, are insufficient. Id.

Applying these principles, the court concludes that the plaintiff has failed to state a viable claim under § 1985(3). He has offered only unsupported, conclusory allegations of a conspiracy, which lack a factual basis. The mere fact that each of the defendants played some role in the custody and divorce proceedings is not sufficient to show an agreement by the defendants to violate the plaintiff's constitutional rights. See Brown v. Angelone, 938 F. Supp. 340, 346 (W.D. Va. 1996). Moreover, the plaintiff's allegations that only four percent of fathers in Virginia are custodial parents and that Judge Potter has a reputation for being prejudiced against fathers, are insufficient to establish that all of the defendants were somehow motivated by a class-based discriminatory animus. Thus, even assuming that the plaintiff alleged sufficient facts to establish an agreement or meeting of the minds by the defendants, the plaintiff's § 1985(3) claim is nonetheless subject to dismissal. Additionally, because the plaintiff has failed to state a claim under § 1985, his claim under § 1986 must also be dismissed. See Trerice v. Summons, 755 F.2d 1081, 1085 (4th Cir. 1985) ("A cause of action based upon § 1986 is dependent upon the existence of a claim under § 1985.").

III. Claims under state law

Having determined to dismiss the plaintiff's federal claims, the court declines to exercise supplemental jurisdiction over the plaintiff's claims under state law. See 28 U.S.C. § 1367(c). Accordingly, such claims will be dismissed without prejudice.

## Conclusion

For the reasons stated, the court will grant the defendants' Rule 12(b)(6) motions to dismiss.[4] The plaintiff's § 1983 claims for declaratory relief against the judicial officers, and the plaintiff's claims under state law, will be dismissed without prejudice. The plaintiff's remaining claims will be dismissed with prejudice. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the plaintiff and all counsel of record.

ENTER: This 12th day of October, 2007.

United States District Judge

[4] Having reached this decision, the plaintiff's motions for preliminary injunction will be denied as moot.